The next case is number 221446, Matthew Haney v. Town of Mashpee et al. At this time, Mr. Revere, please introduce yourself on the record to begin. Good morning, members of the court. My name is Paul Revere III. I represent Matthew Haney, trustee of the Gooseberry Island Trust, the appellant in this matter. This matter is about a, they call it an island, a small island in Pompanouset Bay. It's only 40 feet off the shore at low tide, slightly farther from my current position to where you're sitting, your honors, and 80 feet at high tide. The issue involves whether there has been a regulatory taking of this property by denial of Matthew Haney's applications for variances to construct a single family home on the property. The case was dismissed on a 12B motion for failure to state a claim upon which relief should be granted. I think if the court looks closely at the case law on this matter, the dismissal should not have occurred because this case is ripe. At a minimum, the pleadings that were submitted in this matter demonstrate ripeness under applicable Supreme Court precedent. A motion to dismiss, as we all know, needs to just state a plausible claim for relief. Here, Mr. Haney applied for three types of zoning variances. First, to build a single family home on the island without any access. Access, I'll say, by boat, helicopter, or in this case, waiting is the common means to access. Those were all denied back in 2013. He then went through various proceedings which are detailed throughout the complaint. Can I just jump you ahead to the ground the district court gave against the magistrate judge, which is that the three 2018 ZBA variance denials were not final because they were contingent on other decisions? Well, I don't think that's exactly what the court did, and that's one of the problems with the decision. The court reads various statements by members of the ZBA as to, well, they said things like they were concerned that, well, without the bridge actually being permitted beforehand, we don't know whether the property has access. Maybe I didn't understand your response. You're saying the district court did not do what I said, or are you saying it was wrong to do what it did?  Okay, that's fine, but I just want to make sure we're on the same page, okay? But you're agreeing it did say the ground for finding it not right was that the three ZBA rulings were contingent rulings. I wouldn't call them contingent rulings. I didn't say that you should call them that. I'm saying the district court, the magistrate judge, as her reason for saying it was not right, concluded that the ZBA rulings were contingent. That's the ground given by the magistrate judge. You're saying that's wrong. I think that's wrong because the ZBA's decisions, they decided that under the certain criteria of variances, that granting a variance would derogate from the purpose and intent of the final. And the magistrate judge said, but that followed various statements in the ruling, which she understood to be the rationale for that ultimate conclusion and therefore concluded it was contingent. Now, you say the district court was wrong to do that, right? Yes. Okay, so it seems to me the case turns on whether the district court was wrong to do that. As I understand your briefing, you've asserted three reasons. One is you just say look at the text of the document and you say on a motion to dismiss, it's plausible we're right, correct? Correct. Second, you say it can't have done what she said because you can't even get the other thing you need until the variance is first decided, right? You say as a matter of state law, in order to get the permit for the bridge, you first have to have gone through the variance process. Yes. And I assume you're making that argument to say that shows that your reading of the ZBA is correct and her reading is wrong. Am I wrong about that? You are correct. Okay, and then you give a third argument, which is that the ZBA doesn't have any power to make rulings that are in the purview of other entities, so that also supports your reading, right? Correct. Okay, if I disagree with your last two grounds, that leaves your argument that the face of the rulings by the ZBA show that they're final, not contingent, right? Yes. Okay, what supports that? That would seem to be just a state law question about whether under Massachusetts law, a document that looks like this, that has some hemming and hawing as the rationale, and then the final paragraph just as you describe it, is that a contingent ruling or is that a final ruling? That seems like just a state law question, but you don't cite any state law to guide us on how to construe such a document. Well, I think it is a final. I know you think that, but that's not how we do it. So what supports in state law your reading of that document? Well, in fact, this is part of the most difficult things of these types of cases because to the side rightness, the federal court is always trying to look at the procedures of a state proceeding. When you look at this, my client applied for a variance. That variance was denied. A variance is a site-specific rewrite to a zoning violation. But if it's denied on the ground that there are other four deciding things that we'd like to hear from first, are you saying even then it would be a right challenge for you? Well, when I look at this, as I said in my argument, if you read the provisions of the Zoning Act, it says the zoning board shall make a record of its proceedings and then set forth its reason for denial. The various members had questions. Well, I'm not sure about permitting this without a bridge. I'm not sure about access, et cetera. But the reasons for their denial were the variance criteria. And the variance criteria, as I always say to people, they're very stringent because they're kind of anti-democratic. The town passes a bylaw and then this board says, well, we're going to throw out the bylaw and we're going to rewrite it for this one property here. And therefore, it requires, you know, showing soil conditions, and I cite in here, shape or topography that is especially affects only that lot and not other properties. No substantial detriment to the public good and to do so without nullifying the intent of the zoning bylaw. And the decision here is that it, excuse me, nullify or derogate from the intent. That's a direct quote from the statute on issuing variances. The board says this will derogate from our intent to issue a variance to build on this island. I think one of the things is the district court says that's because they were concluding absent final hearing about the bridge from these other proceedings and knowing what the status of the land is. We're not going to say otherwise, which is different than saying no matter what, we'll say this. Right. That's basically what the case hinges on. You were saying it was as if they said no matter what, you lose. Therefore, it's right. District court said they weren't saying no matter what. They were saying until we hear from these other people, we're going to conclude no variance. Right. But those were areas outside of their jurisdiction to whether a bridge or not. But once they get the answer, then they'll say we'll take the time now to figure out the variance issue. If you're not going to get the bridge permit, why do we need to decide the variance issue? One of the interesting cases that has many similarities is the Palo Zolo case where the National Wildlife Federation said yes, but he didn't apply for a smaller subdivision. No, he didn't apply for his septic permit down in westerly Rhode Island. And the Supreme Court said yes, but no matter what, he has to get this wetlands permit. And the wetlands permit set a standard. I have it written down somewhere here. The variance is the equivalent of that, right? The variance is the equivalent of that. Correct. Yeah, but what the district court said was they didn't say you're never going to get the variance. They just said we're not going to decide whether you're going to get the variance until we hear whether you're going to get the bridge permit. Well, they said that my client filed and they said here's a plan of a bridge. We will have access by a bridge. You can condition. I can cite to the record here if you want me to tell you exactly where it says it. I believe it's two. No, I don't get it.  And if I don't ever get a bridge, this permit will never get into effect. Assume that I had a bridge. It's outside of your jurisdiction to decide this. My brother in some of his arguments says, well, maybe they could build a two-lane bridge. It's cited in the record here. Again, I can give you the provisions. Punkhorn Point Road that comes down to here is a small, undeveloped road. And in the application for the 2018 variances, my brother Brian Wall submitted three variances that had to be approved just to build a home on that road. Because the road down to the possible bridge doesn't even qualify to meet the zoning standards here. Remember, there are three decisions here, too. Can I just ask you a clarifying question? You make a 2013 variance application and a 2018 variance application. In terms of the bridge, what's the difference between those two, or are they the same? As I stated before, as I say, the 2013 was, look, you want to protect wetlands and everything? The way to get to this island, we'll get here by boat. We'll get here by helicopter. We want to build a home. We won't have any road. It'll be just an island, even though it's just a little bit off the shore. There was no roadway access, as in that application. The fire department said it would be okay as long as you put a sprinkler system in the building. So in the second, the later application, it was assume a bridge. It might be wood. It might be steel. Correct. Because we had gotten... We still don't have permission. We had gotten with the wood bridge, which the Mashpee Conservation Commission took so long to act on, they finally lost authority to act on it. It went before DEP. DEP said, hmm, you know, a steel bridge will allow you to get less pilings into the salt marsh. You can essentially fly across the salt marsh and reach the land. And the DEP was ready to approve a steel bridge, but for procedural issues that had never first been reviewed by the local conservation commission. My client is sitting there looking at this matter going, well, I have my bridge. I have my plan. Mashpee's fought me on everything, as pointed out in the complaint. They fight ownership of property in the mainland. Can I just ask you three last things? One, there was a motion to consolidate filed by the trust in, I think it's 2019, consolidate the, is it Elemuth mitigation in Barnesville? Who is it? Elemuth. Elemuth with the Haney action. With the Haney ZVA action. Yes. Right. In that Elemuth motion to consolidate, it describes the ZVA rulings as in part dependent on rulings by other forms. That's how that motion to consolidate with the Haney action describes it. Were you part of that motion? I was not part of that motion. Not you, but was Haney your client? Yes. That joint motion? Yes. How can he take the position for purposes of the joint motion in state court that the ZVA decision was in part dependent on rulings by others and now take the position in federal court that it wasn't? Well, I'm not sure of the exact language, but when I look at this matter, to me, in my history as a land use lawyer, the bottom line is you get separate permits. The second question is what is the significance of the fact that you are staying your state court recourse from the adverse ZVA ruling for purposes of ripeness? Why do you get to come to federal court before you avail yourself of your state court remedy on the ZVA ruling? Well, that's a classic, an area that has been in flux. Because Nick got rid of the requirement. I know you don't have to do inverse concomitation, but that's not the question. The question is with respect to your state court recourse from the ZVA ruling, it seems odd to me that you can come to a federal court making a representation about the finality and adverse nature of an administrative ruling that a state agency issued when you have a state court process for challenging it that you've stayed. Right. Well, two things. The state court process for variances, essentially if you look at the case law, there's absolutely no right to get a variance. You can meet all of the criteria for a variance and the board can deny it. The only possible remedy of that case is remand. May I finish? Yes. When these matters started out in 2013, there was a requirement to go through all your remedies in state court. Now the law has changed to not complete those remedies, but also Pactel came down and said, if you know what the answer of these proceedings are, it's absolutely. How do we know what the outcome in state court will be? You have a pending action. You must think you might win. I think the only reason we have the pending action was filed primarily to see whether the court was going to rule that we had to complete this action. But then you asked them to stay. Correct, to save the resources of the town. So what basis is this for thinking it's clear what the outcome of state law would be? You have a pending appeal that you must think had some merit in state court to overturn the ZBA ruling that you've asked the state court not to rule on yet. So in what sense could it be the case that in federal court you can represent that we know the outcome of your suit is that it's a loser? Because the only relief allowed is remand in that matter. Okay, thank you. Thank you, counsel. At this time, Attorney Podolsky, please introduce yourself on the record to begin. Good morning, Your Honor. It's Joseph Podolsky for the appellees. I'd like to address the questions that the court raised with my brother. First, the 2018 variance decisions discuss the issue squarely and specifically discuss the need to go to the Conservation Commission, in the first instance, to apply for a bridge permit or an NOI for a bridge. The decision very clearly indicates that it's not being decided with prejudice, that it's not final. Is that true of the 2018 ruling? It is, Your Honor. Where does it very clearly say it's without prejudice? I can give you the site, but it's in the appendix. There's three separate decisions relating to the three variances. I thought the 2018 didn't say one way or the other about without or with prejudice. I'm not sure it states with or without, but the discussion within the decision indicates that every member that spoke on whether or not they could be deciding the issue indicated that they didn't think they could be deciding the issue in the first instance, that the issue needed to go to the Conservation Commission to be decided in the first instance with an NOI. The actual final paragraph just is the language that was quoted. It doesn't make any reference to that. I don't know if it says with prejudice or without prejudice. It doesn't say either. It doesn't say either. Actually, I don't know if it says either. It doesn't say either. That paragraph only references the specific zoning section that the case was being decided. So what does state law tell us about how we're supposed to understand a ruling by the ZBA that has descriptions of exactly what you say, various people saying, gee, other people should decide this, but then has a final paragraph, doesn't say with prejudice or without prejudice, and just says denied because it would be in derogation of blah, blah, blah. What do we make of that? Nothing prevents Mr. Haney from getting the NOI. No, I understand that. But he says it's a final rejection of the variance. What in state law tells us whether he's right in his reading of it or whether the district court's reading of it was the better reading of it? Is there anything? I think the State Zoning Act. And the record of this case shows it clearly. I mean, in 2013, he filed an application for variance. The same language was used. No, that ended with without prejudice. I think it's the same language, Your Honor. That had, I think, in 2013, a specific without prejudice designation to it. I think it's the exact same language. I could be wrong. But the point is that nothing prevented him from going back, filing the NOI for the steel bridge, as the ZBA was saying he should do in the first instance, and then if and when that's approved, coming to the ZBA for any variances that were necessary. But that assumes that the ZBA ruling wasn't already deciding no, no matter what happens. Nothing within the ruling says that. Does anything within the ruling specifically say the opposite? I'm not certain, standing here today, that that's the case. Well, then what do we do if it's unclear? That's my question. I don't know if I have an answer for you, Your Honor, other than to point the court to the Zoning Act, the record of the case. What does the Zoning Act say that helps you? I don't have a specific site for you, Your Honor. I think the point being is that nothing within that decision indicates finality. There's nothing within the decision that indicates finality. Even the language that my brother cites doesn't indicate finality. It just indicates the specific part of the act that the ZBA was relying upon as it related to the facts before them. Which, when they discussed, they said, do we presume variance denials are final or non-final under state law? I don't know if there's a presumption. I don't think I can answer that question any further than I have, Your Honor. But my point is that nothing within the decision states, this is a final decision. And I know that I've covered that. But even the members indicate, go to the CONCOM, discuss or file an NOI, and then come back and we'll resolve the issue. And that is the face of the ruling. That's the first question that Your Honor posed to my brother. And that shows that the other point is that nothing within those 2018 decisions indicates any other rationale. So for my brother's case to succeed, he will essentially have us infer that there was some other rationale, some other reason within the decision that isn't found anywhere within the decision. It's fictional. The entire point was to get a ZBA variance ahead of getting the bridge permitted, which does not make sense. And one other point I'll address on this, because it's raised in the papers, is my brother argues that Section 131, or Chapter 131, Section 40, I believe, indicates that the bridge permit is the last permit. That's not what it indicates. What that specific section of state law says is that when you go to a CONCOM and you file an NOI, you have to have every permit either in hand or applied for as it relates to what you're going to the CONCOM for. So in that case, that is the bridge. And so if there are other permits that are necessary for the bridge, then that may be necessary to go to the CONCOM for the NOI, but not for the building of a structure on the island and whether or not the island itself has a street or frontage or what have you. The second question that Your Honor posed was – I'm sorry, just before you leave that. Yes. Is the implication of what you're telling us now that the only thing that's indicated in the 2018 ruling is that it's contingent on the bridge, that if those approvals are gained, then the entity can't move the goalpost at this point? Are you telling us that? I'm not sure I understand the question. I think the answer is no. But is the question that if the bridge receives a permit from CONCOM, are they then hitting a brick wall anyways with the ZBA? The answer is no, and I can't actually answer that question because the ZBA has to decide that in the first instance. And I think that's what they were saying. You're saying that we could go either way. Once we get the permit, we just don't know what the ZBA will do and that's all the ZBA was saying? That's the process, and I wouldn't be able to answer that. It hasn't happened yet. I can't answer that. So you don't read what they said to suggest that there's nothing else possibly on the table other than the bridge? There could be. There could be. We don't know. I mean, the point is that that's not the first part of the process for this particular parcel. For this parcel, it's an island. My brother says 40 feet. It's 80 feet off of the mainland at high tide. The bridge would have to span that. And so it's 80 feet over state-owned waters where the Mashpee Wampanoag Tribe has agricultural rights in the farming of those particular waters. And so that bridge is the first part of the process for public safety reasons so that public safety vehicles can access the property. The ZBA was essentially saying that has to happen first. Can I ask you this other question, which is both parties and the district court seem to be of the view that a key question is whether the 2018 ZBA rulings were contingent or not. You're taking the position they were. The opponent takes the position they aren't. District court sided with you. But let's imagine that your opponent's right and they were final ZBA rulings. Why would that make it right given that there is a state court appeals process which is underway and which has been stayed? So I'm going to answer the hypothetical, Your Honor, but by no means am I going to submit it to this position. The position that the ZBA found itself in will have changed. So if the appellant applies for an NOI for the steel bridge and gains that. No, I understand. I'm not asking what happens if the NOI process plays out. I'm asking why for takings purposes is a federal takings claim right when there is state court recourse from a final ZBA ruling adverse to the landowner that has not run its course. And, in fact, the landowner is saying, I don't want it to run its course. So the answer is found in Williamson, Lucas, Pactel, if we're looking at this court. Do any of those cases say that you can forego your state court appellate rights? So that's not what I'm saying. What I'm saying is that those cases say that you need a final decision by the relevant state decision maker. And so my point is that that relevant state decision maker is the CONCOM in this instance. I understand that, but suppose I don't agree with you. Suppose if he can't get the variance, if there's a final denial of the variance, then that would be the relevant decision maker. You don't seem to disagree with that. I completely disagree. Okay, but let's say I disagree with that just hypothetically, okay? If your opponent's position is right and a final adverse ruling by the ZBA is dispositive, why is it not the case, though, that you still have to, as a landowner, run the course of the state court proceedings that can review that ZBA ruling? Because the relevant decision maker under Massachusetts law isn't the ZBA unreviewed. It's the ZBA subject to state court review, I thought. I think, well, that Williams' second holding said that, and Nick, I forget the second part of the decision issued by the Supreme Court in 2017, overruled that. What they're looking at is the final decision of the municipal decision maker in this instance because we're dealing with a municipality, and then maybe the Department of Environmental Protections as it relates to the state-owned land. But I don't think that the administrative appeal process under 30A, Section 14, has to be followed under the new precedent under Nick. But my point is, though, and bluntly, based on those cases, it says relevant decision maker because that doesn't mean that somebody can go to, say, the building department and apply for an occupancy permit for a house that hasn't been built yet and say, well, we're going to get those permits and these permits and that permit. And the occupancy permit gets denied, and they say, well, we have a takings now because they won't let us build the house because we're never going to be able to occupy it, so we must have a takings. Those cases all say you have to follow the reasonable permitting procedures put in place, and that doesn't necessarily mean that there's only one, right? In this case, there's more than one because we're dealing with an island that goes over state-owned waters with an agricultural farm. But you'd agree in your hypothetical if you go to the occupancy office for the unbuilt house and you say, I'd like the permit, and the building office says, we'll never grant one for that property no matter what you do, no matter how many permits you get, we'll never grant it. Then it would be right, right? I completely agree. Okay, so your opponent is saying that's what happened here with the ZBA rulings. You're just saying that's not the right way to read them, right? No, my opponent is saying that the ZBA decided the variance issues and the bridge issue. In the appellant's brief, he says, they effectively said, we'll never give you a bridge. And they didn't say that, and they can't say that. In fact, the CONCOMM and the members of the CONCOMM are not even defendants to this action because they haven't acted upon the bridge application because it's never been filed. And so if we look at the 2018 variance decisions, they very clearly say, you need in the first instance to go to get a bridge approved. That's the first and most important part of this. And then if we look beyond just those decisions, and the decisions relate to the public safety reason of the fire department's access, the application filed by Mr. Haney and the trust for the variance in 2018 includes within it exhibits. And one of those exhibits is a letter from the fire chief at the time saying, essentially, and the representation was that there's a discussion of the steel bridge. If you get a steel bridge, that's what other islands in the town of Mashpee have, or it's conforming in the sense with what other islands in the town of Mashpee have, which is access to the property, which is our concern. And so the application said, you know, we're going to get a bridge. The ZBA, they made the representations that from the fire department, if the bridge was had then or permitted and planned, that would solve that concern, which then fundamentally solves the only concerns that were being discussed by the ZBA in the 2018 decisions when they were saying, go to the CONCOM in the first instance, get the bridge approved, and then come back and we'll figure out what we need to do on the variances. Unless your honors have other questions, I don't have anything else. Thank you. Thank you. That concludes argument in this case.